**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CARI LEEANN HODGES, | ) | CASE NO. 1:25-CV-02239-DAP |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Cari Leeann Hodges ("Hodges" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On June 20, 2023, Hodges filed applications for SSI, alleging a disability onset date of June 1, 2023 and claiming she was disabled due to PTSD, Runners Knee, Orbital floor break – right eye, broken pinky finger, anxiety, depression, PMDB, and dyslexia.  (ECF No. 5, PageID #: 236, 258, 261). The applications were

1

denied initially and upon reconsideration, and Hodges requested a hearing before an administrative law judge ("ALJ").  (ECF No. 5, PageID #: 161).  On September 24, 2024, an ALJ held a hearing, during which Hodges, represented by counsel, and an impartial vocational expert testified.  (ECF No.  5, PageID #: 96-121).  On, October 23, 2024 the ALJ issued a written decision finding Hodges was not disabled.  (ECF No. 5, PageID #: 79-91).  The ALJ's decision became final on November 10, 2024, when the Appeals Council declined further review.  (ECF No.  5, PageID #: 49-51).

On October 20, 2025, Hodges filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 8, 10, 11). Hodges asserts a single assignment of error: that the Appeals Council improperly rejected evidence which meets the criteria for a sentence six remand. (ECF No. 8, p. 1).

## III. Background

### A. Relevant Hearing Testimony
The ALJ summarized the relevant testimony from Hodges's hearing:

> The claimant in this case alleges a combination of severe impairments have significantly affected her ability to engage in work activities on a consistent basis. At the hearing, the claimant testified to having problems with her right knee. Despite steroidal injections at the knee, she continues to experience pain and flare-ups. She is unable to stand and walk for extended periods. The claimant also describes severe mental impairments. She reported experiencing a history of abuse, and experiences triggering her PTSD. The claimant describes frequent nightmares and heightened anxiety. It is difficult for her to engage outside of her home. The claimant reports crying spells and headaches. The claimant describes difficulty with concentrating and often being

2

irritable. She describes being dyslexic and having a difficult time focusing on tasks. The claimant also describes a hart dime interacting with others and describes herself as moody. (Hearing Testimony).

(ECF No. 5, PageID #: 85).

## B. Relevant Medical Evidence

The ALJ also summarized Hodges's health records and symptoms:

[T]he claimant has been assessed with and received treatment for depression, anxiety, and PTSD. The claimant appeared for mental health counseling and treatment where she identified past traumatic events that have affected her mental health functioning. She sought mental help treatment to work through those past traumatic events and current mental health episodes she was experiencing. (Ex. 6F/1). The claimant reported traumatic sexual events in her childhood. She also described physical abuse by family members and an overall difficult upbringing. (Ex. 6F). She was truant while in school and disengaged with school altogether. (Ex. 6F). The claimant described verbal arguments with a previous spouse as well as experiencing domestic violence. (Ex. 6F). The claimant reported having a difficult time with daily activities as a result of her mental disorders. (Ex. 6F/3). She indicated that she had no close friends or supportive relationships. (Ex. 6F/3). During her adult mental diagnostic assessments, she described feeling depressed and lacking the desire to deal with issues in her life. (Ex. 6F/8 "I am very depressed. I hate my life. I think a lot of it is related to other people's energies. Everything happening in my life has been increasing my depression. I just don't feel like dealing with it. I don't want to do a lot of things so why bother." Ex. 6F/ 9 "I second guess myself about everything out of my PTSD"). The claimant also indicated that she can explode in anger when she is unable to handle a situation. (Ex. 6F/9 "struggles with focusing related to anxiety and PTSD"). As for her complaints of cognitive deficits, according to the claimant, she was "delayed" in speaking and walking as a child, as well as meeting other milestones as an infant. (Ex. 6F/3). The claimant also endorses brain fog and poor memory. (Ex. 16F/7). She also reported being more on edge and agitated with difficulty concentrating. (Ex. 8F/70). By way of treatment, the claimant was enrolled in behavioral health and therapy sessions where she worked on coping strategies for her mental health. (Ex. 6F). With ongoing counseling and treatment, the claimant's

treating sources noted her positive responses and benefits. (See Ex. 6F/41 "client responded well to processing something the counselor said in a previous session. client responded well in processing past abuse;" Ex. 6F/202 "shared with provider that she Is doing well;" Ex. 8F/38 "patient reports doing well overall. reports self criticism continues and is 'working on it'"). Moreover, during various mental health assessments, she was shown to exhibit appropriate behavior, appropriate thought process, her mood and affect congruent, and her orientation was appropriate. (Ex. 6F/21). There is no evidence pointing to her inability to manage her daily activities when adhering to her medication. In fact, at the hearing, the claimant testified that she drops her children off at school, uses the air fryer at home, and uses the Walmart app to order supplies for the house. (Hearing Testimony). Likewise, throughout her medical records, the claimant reports that she enjoys "crafting" for upcoming holidays. (Ex. 6F/174). Treatment notes showed average intelligence and no signs of memory or attention deficits. (See Ex. 6F/14; Ex. 8F/11 "cognition is intact and age appropriate…fund of knowledge is adequate"). Furthermore, although she expresses difficulty in certain social settings along with bouts of anger and irritability, the claimant attends her medical appointments and therapy sessions without difficulty and did describe going to the grocery store and a family reunion. (Ex. 8F/34). The claimant is also described as pleasant and a "people pleaser" during her mental health assessments. (Ex. 1F/140; Ex. 8F/73 "behavior/demeanor: pleasant, cooperative;" Ex. 9F/7). Indeed, when she adhered to her medication regimen, there was reported improvement of her overall mental health. (See Ex. 8F/7 "patient reports the medication helps with mood and anxiety when taking as prescribed;" Ex. 8F/34 "energy reports improved," Ex. 6F/174 "claimant had showered today before appointment and reports with the kids in school she is back on track to taking her meds on a more routine schedule" Ex. 8F/47; Ex. 6F/49 "client seemed to feel better about herself and stated she bought some new clothes."). Overall, while the claimant's mental disorders are severe, the residual functioning capacity described above has reasonably taken into consideration the functional limitations caused by the combination of the claimant's psychiatric impairments.

(ECF No.  5, PageID #: 85-86).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2.      The claimant has the following severe impairments: right knee arthritis, obesity, migraine, depression, anxiety, posttraumatic stress disorder ("PTSD").

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant must avoid climbing ladders, ropes, and scaffolds. She can occasionally climb ramps and stairs. The claimant can frequently balance and occasionally stoop, kneel, crouch and no crawling. The claimant must not work around unprotected heights or hazardous machinery. She must avoid commercial driving. The claimant must avoid right foot control operations. No work with the general public, and only occasional interaction with co-workers and supervisors. Mentally, the claimant can perform simple and routine work but should not perform routine tandem tasks with co-workers. The claimant should not perform fast-paced production assembly line work or work where the machine is setting the pace and no strict hourly production requirements. The claimant can work in an environment with only occasional decision making and only occasional changes in work setting.

6.      The claimant was born [i]n February … 1982, and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.      The claimant has a limited education.

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, since June 29, 2023, the date the application was filed.

(ECF Doc. 5, PageID #: 81-90).

**V. Law & Analysis**

5

**A. Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).  "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income

or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Hodges raises a single issues on appeal: that the Appeals Council improperly rejected evidence which meets the criteria for a Sentence Six remand. (ECF No. 8). The evidence at issue is a January 27, 2025 psychological and intellectual evaluation report from Pace Consulting which assessed Hodges with of attention-

deficit hyperactivity disorder, specific learning disorder with dyslexia and impairment in written expression. (ECF No. 8, p. 4).

### 1. Sentence Six Framework

When determining whether the ALJ's decision is supported by substantial evidence, a reviewing Court is constrained to reviewing the record that was before the ALJ. *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 685 (6th Cir. 1992); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003). However, under sentence six of 42 U.S.C. § 405(g), the reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

> The Sixth Circuit has interpreted this statute as creating the following requirements for a remand to consider new evidence: that the evidence be "new"- that is, "not in existence or available to the claimant at the time of the administrative proceeding"; that the evidence be "material," which requires showing a "reasonable probability" that the Commissioner would have reached a different disposition of the claim if presented with the new evidence; and that "good cause" exists for not producing the evidence in a prior proceeding, which requires showing "a reasonable justification for the failure to acquire and present the evidence of inclusion in the hearing before the ALJ."

*Phillips v. Comm'r of Soc. Sec.*, No. 5:19-CV-01261, 2020 WL 1159376, at *10 (N.D. Ohio Mar. 10, 2020) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citations and internal quotations omitted)). The party seeking the remand

bears the burden of showing that a sentence six remand is appropriate. *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). However, a court may remand a case under sentence six either upon motion or *sua sponte*. *Gifford v. Comm'r Soc. Sec.*, No. 5:20-CV-559, 2021 WL 3737912, at *4 (N.D. Ohio Aug. 24, 2021) (citing *Street v. Comm'r of Soc. Sec.*, 390 F. Supp. 2d 630, 640 (E.D. Mich. 2005) ("[U]nder the plain language of § 405(g), the Court can properly grant a sentence six remand *sua sponte*, based on its finding that the post-decision material is both new and material.") (internal citation omitted)).

If a district court remands a claim under sentence six, the court "does not affirm, reverse, or modify the Commissioner's decision," rather, it remands for further administrative proceedings without ruling on the merits." *Prater v. Comm'r of Soc. Sec.*, 235 F. Supp. 3d 876, 880 (N.D. Ohio 2017) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991)). And jurisdiction in the event of such a remand would remain with the district court, *i.e.*, a sentence-six remand "is not a final judgment that can be appealed." *Id.*

### 2. Remand is not Warranted Pursuant to Sentence Six of § 205(g) of the Social Security Act.

#### i. The Evidence that Hodges Asks Be Considered by the ALJ Pursuant to Sentence Six Remand Is New Evidence.

Evidence is considered new, for purposes of a sentence six remand, "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan*

*v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)). Courts within this circuit seem to disagree on what "administrative proceeding" means in this context. Some assert that to be new, evidence must not have been in existence or available to the claimant at the time of the ALJ's decision, *see, e.g.*, *Beaty v. Comm'r of Soc. Sec.*, No. 1:10-CV-894, 2012 WL 3779700, at *7 (W.D. Mich. Aug. 3, 2012), *report and recommendation adopted*, No. 1:10-CV-894, 2012 WL 3779912 (W.D. Mich. Aug. 31, 2012)) (finding that the records the claimant presented to the Appeals Council were not "new" for sentence six remand purposes because they were created before the ALJ issued his decision); *Long v. Comm'r of Soc. Sec.*, No. 1:20-CV-1490, 2021 WL 2530216, at *3 (N.D. Ohio June 21, 2021) (finding the claimant could not show that a record created before the ALJ hearing was new), while others assert that evidence is new for sentence six remand purposes if it was not in existence or available to the claimant at the time of the administrative hearing in front of the ALJ. *See, e.g.*, *Belcher v. Comm'r of Soc. Sec. Admin.*, No. 5:22-CV-01903-JRA, 2023 WL 6963544, at *6 (N.D. Ohio Aug. 24, 2023), *report and recommendation adopted sub nom. Belcher v. Comm'r of Soc. Memorandum of Opinion & Sec.*, No. 5:22CV1903, 2023 WL 6958661 (N.D. Ohio Oct. 20, 2023) (finding records submitted to the Appeals Council were new because they pertained to evidence not in existence at the time of the administrative hearing); *Guthrie v. Comm'r of Soc. Sec.*, No. 18-13784, 2019 WL 8435278 (E.D. Mich. Nov. 26, 2019),

report and recommendation adopted, No. 18-13784, 2020 WL 913816, at *5 (E.D. Mich. Feb. 26, 2020) (finding "medical records created after the date of the hearing are 'new' for purposes of the sentence six remand analysis"). In an abundance of caution for Hodges's interests, this Court will consider evidence "new" under 42 U.S.C. § 405(g) if the evidence did not exist or was unavailable to Hodges at the time of the ALJ's hearing, here, September 24, 2024.

The report that Hodges seeks to have considered pursuant to sentence six is dated January 27, 2025, four months after the hearing occurred, and three months after the ALJ issued her decision. (ECF Doc. 5, PageID #: 55). The report did not exist at the time of the hearing, and is therefore new. The Commissioner challenges the assertion that this is "new" evidence because Hodges is unclear when the testing underlying the report occurred. (ECF Doc. 10, p. 7-8, citing ECF Doc. 8, p. 8). It is true that Hodges stated, "while the report indicated when it was dated, or created, it was unclear if Plaintiff had undergone all testing on that date." (ECF Doc. 8, p. 8). The first page of the report appears to provide the answer to this mystery: it states that Hodges was 42 years and 5 months old at the time of testing. (ECF Doc. 5, PageID #: 55). Because both the record and the report state that Hodges was born in February 1982, this places the date of testing in July 2024, prior to both the hearing and the ALJ's decision. (*Id*. at PageID #: 89). As Hodges explains, however, this does not change the fact that the report interpreting the raw testing data was

11

unavailable until January 27, 2025. (ECF Doc. 11, p. 1). Therefore, the Court finds this report to be new evidence.

### ii. The Evidence that Hodges Asks Be Considered by the ALJ Pursuant to Sentence Six Remand Is Not Material

For purposes of a sentence six remand, "evidence is 'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.' " *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). However, "Evidence is not material if it is cumulative of evidence already in the record, or if it merely shows a worsening condition after the administrative hearing." *See Prater v. Comm'r of Soc. Sec.*, 235 F. Supp. 3d 876, 2017 WL 588496 at * 2 (N.D. Ohio 2017). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003); *Sizemore*, 865 F.2d at 712 ("Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition"); *Deloge v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 517, 2013 WL 5613751 at * 3 (6th Cir. 2013). Courts within this Circuit also reject claims of new medical opinions suggesting greater RCF limitations as evidence of materiality. *See e.g.*, *Latoya Congress obo J.M. v. Comm'r of SSA*, No. 1:22-cv-01623, 2023 WL 4687624, at *17 (N.D. Ohio July 6, 2023).

Here, the Appeals Council rejected Hodges's additional evidence on the basis that it is not material, because the report is dated three months subsequent to the

ALJ's decision, explaining "[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 23, 2024." (ECF Doc. 5, PageID #: 50).

Hodges argues that the testing is material because "while the report was dated after the ALJ's decision, it relates to severe impairments, allegations and medical evidence during the relevant period." (ECF Doc. 8, p. 8). She notes that the report "confirms [she] had dyslexia and learning impairments," and would likely have changed the ALJ's finding that dyslexia was not a medically determinable impairment, as well as providing further, more specific support for her allegations of "learning disability and areas of weakness and impairment." (*Id*. at p. 8-9). She argues that because the ALJ didn't find dyslexia a medically determinable impairment, she failed to consider its functional effects in crafting her RFC determination. (*Id*.) Therefore documentation supporting medical determination of this additional impairment would likely change the outcome of her case. (*Id*.)

With regard to whether the testing reflects Hodges's impairment during the relevant period, the Court can turn to the report, which, as noted above, indicates the testing took place in July 2024, prior to the hearing. (ECF Doc. 5, PageID #: 55). Based on the date of testing specified in the report, the Appeals Council's decision was based on an erroneous premise: although the report was authored subsequent to the relevant period, the test results reflect her functional abilities during that time.

13

Because the evidence relates to the relevant period, the Court must turn to the issue of whether there is a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the report at issue. Here, there are strong arguments on both sides.  Hodges explains that the report both identifies dyslexia as a medically determinable impairment and gives clarity to the ways her ADHD, trauma history, anxiety, depression and PTSD interact with her intellectual disabilities to limit her functional abilities. (ECF Doc. 8, p. 8-9). In particular, the report finds that her working memory is in the 4th percentile, which is borderline range, and explains that deficits can make "learning, retaining, and applying new information challenging," require additional time to and also "may make multi-step tasks difficult and interfere with her ability to maintain engagement, even during activities she finds interesting or rewarding." (ECF Doc. 5, PageID #: 59). Her processing speed was also in the borderline range, at the 8th percentile, which "can make it harder to … complete work efficiently." (*Id*.)  It concluded that her ADHD would "make it difficult to independently start and persist in work responsibilities," and "may lead to rash decisions, inconsistent performance, and interpersonal friction with co-workers." (*Id*. at PageID #: 66).

The author, psychologist Heather Griffith, directly addressed the issue of how these impairments might affect Hodges' employment. She advised that Hodges should:

14

- Avoid jobs that are fast-paced, unstructured, and require juggling many tasks

- Seek positions with clear hierarchy of responsibilities, task completion templates/models, minimal distractions

- Consider roles that rely more on interpersonal, verbal, creative skills vs. speed or detail orientation

- Request reasonable accommodations like written instructions, regular check-ins with supervisors, quieter workspace

(*Id*. at PageID #: 68).

The Commissioner points out that many of these recommended limitations were already in the ALJ's RFC determination.  (ECF Doc. 10, p. 10-11). Most relevant, the ALJ determined:

> [T]he claimant can perform simple and routine work but should not perform routine tandem tasks with co-workers. The claimant should not perform fast-paced production assembly line work or work where the machine is setting the pace and no strict hourly production requirements. The claimant can work in an environment with only occasional decision making and only occasional changes in work setting.

(ECF Doc. 5, PageID #: 84). Further, the ALJ found greater limitations in the area of interpersonal interaction, limiting Hodges to no tandem tasks, and also "[n]o work with the general public, and only occasional interaction with co-workers and supervisors." (*Id*.)

Hodges also fails to note that the report also found she had many strengths, including "great insight and self-awareness," "a strong desire to learn," "the capacity to analyze novel information and build connections," "robust" listening

15

comprehension skills, and an "intact" ability to "engage with verbally presented information, think critically, and express her understanding." (*Id*. at PageID #: 65-66). These strengths help provide context for the report's conclusion that Hodges's intellectual impairments would not limit her employability.

As the Commissioner notes, the report itself does not support Hodges's assertion that the ALJ would have found greater limitations to her ability to read and perform math, leaving her incapable of performing even simple work. (ECF Doc. 10, p. 10, citing ECF No. 8, p. 10). The diagnosis of moderate dyslexia, even combined with Hodges's other impairments, does not automatically preclude employment. On the contrary, the report encourages Hodges to explore employment. (ECF Doc 5, PageID #: 68). It specifically considers works that might fit her "strengths and limitations," and describes limitations which are similar to those in the ALJ's RFC determination. (*Id*.) Both the report and the RFC determination exclude fast-paced work, limit Hodges to work where routine provides a structure and template for her work, and limit distractions such as changes in the work setting or social interaction. (*Id*.) In some areas – like social interaction and decision making – the report advises *fewer* limitations than those found in the ALJ's RFC determination. (*Id*.) Despite administering tests measuring Hodges's intelligence and academic achievement, the report's author did not opine

that Hodges's ability to read or write was impaired enough to require employment limitations.

Even assuming the report had been available to the ALJ and she had found it persuasive, it is not clear to the undersigned why Hodges believes that there is a reasonable probability the ALJ would have imposed additional work limitations beyond those recommended in the report. Therefore, the Court finds this evidence is not material.

### iii. Claimant Does Not Establish Good Cause for Failing to Provide this Evidence

Finally, the Commissioner points out that Hodges fails to address the final requirement for a sentence six remand: that the Hodges show good cause for not producing the evidence in a prior proceeding, which requires showing "a reasonable justification for the failure to acquire and present the evidence of inclusion in the hearing before the ALJ." *Phillips*, 2020 WL 1159376, at *10 (quoting *Foster*, 279 F.3d 348, 357 (citations and internal quotations omitted)). Hodges deemed this issue unworthy of response, explaining that "Defendant's arguments fail to refute the harmful errors raised in Plaintiff's Memo and advance nothing more than substantial evidence justifications." (ECF Doc. 11, p. 1). The undersigned disagrees.

Courts in this Circuit consider obstacles such as a plaintiff's lack of counsel, mental impairment, and lack of education to establish "good cause" under Sentence Six. *See Grant v. Astrue*, No. 2:07-CV-344, 2008 WL 4059777, at *5 (S.D. Ohio

Aug. 6, 2008) ("Given plaintiff's lack of counsel and apparent mental impairment, combined with her lack of education, there is no basis for concluding that plaintiff acted unreasonably in failing to either acquire or present this evidence to the administrative law judge"); *but see Walton v. Astrue*, 773 F. Supp. 2d 742, 753 (N.D. Ohio 2011) (good cause does not exist where claimant "was represented by counsel during the administrative hearing before the ALJ and, overall, the record does not reflect the factors that would distinguish him from the majority of near destitute claimants who timely submit medical evidence").

Here, Hodges was represented by counsel. The report at issue shows borderline and low average intellectual functioning. (ECF Doc. 5 at PageID #: 58-9). However, as the ALJ noted in her decision, the record before her included mental status exam results that found "no cognitive impairment identified and intelligence deemed average." (ECF Doc. 5 at PageID #: 82, citing *Id*. at PageID #: 549-50).[1] Although she has less than a high school education, Hodges appeared competent to recount her medical history at the hearing, and had the assistance of her counsel. Thus, the factual basis for a finding of good cause in *Grant v. Astrue* is not present in this case.

---

[1] A review of the record shows mental status exam from 2022 and 2024 describing Claimant's cognition as unimpaired, and her intelligence as average. (*See, e.g.,* ECF Doc. 5 at Page ID #: 549, 981).

If the report presented as additional evidence in this case is credible, the testing underlying it took place in July 2024, prior to the September 2024 hearing. (ECF Doc. 5 at PageID #: 89). It involved the administration of:

- intake questionnaire

- adverse childhood experiences questionnaire

-  adult ADHD self-report scale

- Weschler Adult Intelligence scale

- Weschler Individual Achievement test

- adult ADHD rating scale self-report form

- comprehensive executive function inventory self-report form

- Generalized Anxiety Disorder 7-item scale

- behavioral observation

- diagnostic interview

(*Id*.) It would be hard to forget having recently undergone such an extensive assessment. Yet neither Hodges nor her counsel alerted the ALJ that the testing had occurred. (*Id*. at PageID #: 109-11).

At the hearing, the ALJ indicted the last mental health treatment record she had was from Groundworks, the provider that referred Hodges for the ADHD evaluation, and was dated August 6, 2024. (*Id*. at PageID #: 109-10, citing *Id*. at

19

PageID #: 1222-26).[2] The ALJ told Hodges and her counsel that she had no records after that date, and explained: "I just want to make sure I'm not missing anything" that was different from "continuation of care and routine treatment." (*Id*. at PageID #: 110). Hodges explained that she was currently accessing therapy though Groundworks and hadn't seen a psychiatrist since leaving her prior treatment provider, Ontario Hope, in May 2024. (*Id*.) Despite direct questioning by the ALJ about whether the record was complete, neither Hodges nor her counsel informed the ALJ that another provider had recently completed thorough testing relating to Hodges's ADHD. (*Id*.) When the ALJ asked about other providers, they did not mention Pace Consulting. (*Id*.) Hodges presents no argument to establish good cause in the face of these facts.

If, on the other hand, the date of testing specified on the report is inaccurate, then the Appeals Council's conclusion that it is not material because it evaluates Hodges's condition after the close of the relevant period may be correct.  Further, a significant factual inaccuracy in the report would likely go to the reliability and persuasiveness of the report as a whole, undermining its materiality in a different way.

---

[2] The undersigned has reviewed these records, which cover Claimant's therapy during the period from June 11 – August 6, 2024, and they do not mention the referral for ADHD assessment, or any of the test results. (ECF Doc. 5 at at PageID #: 1222-54).

20

For all the reasons herein, the undersigned concludes that although the report relates to Hodges's mental and intellectual impairments, it is not material to her claim's disposition. Further, even if it was material, Hodges has failed to establish good cause for failing to alert the ALJ to the fact that she had recently undergone additional, extensive testing shortly before the hearing. Accordingly, the Court should not remand the claim under sentence six.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Hodges's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: July 6, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).